IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LE'KESHA BURNETT                :

                                     :

     v.                      : Civil Action No. DKC 2005-1279

                                     :

UNITED STATES OF AMERICA      :

                                     :

**MEMORANDUM OPINION**

Presently pending in this wrongful death case is the motion of Defendant the United States of America to dismiss the complaint of Plaintiff Le'Kesha Burnett for lack of subject matter jurisdiction. (Paper 7). For the reasons that follow, the court will defer its decision on Defendant's motion and allow the parties a brief period in which to engage in limited discovery. Thereafter, the court will hold an evidentiary hearing on Defendant's motion to dismiss.

**I. Background**

This case arises from an incident that occurred on the grounds of the Beltsville Agricultural Research Center ("ARC") in Beltsville, Maryland, property owned by the United States Department of Agriculture's Agricultural Research Service ("ARS"). In July 1998, ARS awarded a contract to IMI, Inc., that encompassed, among other things, the renovation of Greenhouse No. 3 at ARC. On July 10, 2002, Harry Burnett, an employee of IMI's subcontractor, was working on the roof of Greenhouse No. 3 when it began to rain. In the process of trying to get down from the roof,

Mr. Burnett slipped and fell from the greenhouse into an open stairwell, suffering fatal injuries.

On February 11, 2004, counsel for Ms. Burnett, the decedent's wife, filed an administrative claim with the Department of Agriculture. The Department failed to issue a final written denial of the claim within six months of the filing, and Plaintiff filed a complaint with this court on May 11, 2005.[1] Plaintiff, individually and in a representative capacity, asserts the following claims: (a) count I, wrongful death; (b) count II, wrongful death brought on behalf of the decedent's daughter, D'Aisha Burnett; and (c) count III, survival action, brought on behalf of decedent's estate. The statutory basis for Plaintiff's claims against the United States is the Federal Tort Claims Act ("FTCA"), codified at 28 U.S.C. §§ 1346(b), 2671-80. On July 26, 2005, Defendant filed a motion to dismiss, asserting that this court lacks subject matter jurisdiction over the claims. (Paper 7).

## II.  Standard of Review

Motions to dismiss for lack of subject matter jurisdiction are governed by Fed.R.Civ.P. 12(b)(1).  The plaintiff bears the

---

[1] A claimant may not bring suit unless the claim was presented to the appropriate federal agency and the claim was denied in writing. 28 U.S.C. § 2675. If the federal agency fails to make a final disposition of the claim within six months of its filing, at the option of the claimant it may be deemed a final denial thereby allowing the claimant to bring suit. *Id*.

burden of proving that subject matter jurisdiction properly exists in the federal court. *See Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999). A plaintiff who sues the United States "bears the burden of pointing to . . . an unequivocal waiver of immunity." *Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (quoting *Holloman v. Watt*, 708 F.2d 1399, 1401 (9th Cir. 1983)). In a 12(b)(1) motion, the court "may consider evidence outside the pleadings" to help determine whether it has jurisdiction over the case before it. *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991); *see also Evans*, 166 F.3d at 647. In doing so, the court is "free to weigh the evidence and satisfy itself as to the existence of the power to hear the case." *Williams*, 50 F.3d at 304. The court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Richmond*, 945 F.2d at 768. In *Lovern v. Edwards*, 190 F.3d 648 (4th Cir. 1999), the United States Court of Appeals for the Fourth Circuit stated:

> A district court may address its lack of jurisdiction in two ways. The court may find insufficient allegations in the pleadings, viewing the alleged facts in the light most favorable to the plaintiff, similar to an evaluation pursuant to Rule 12(b)(6). Alternatively, after an evidentiary hearing, the court may weigh evidence in determining whether the facts support the jurisdictional allegations.

*Lovern*, 190 F.3d at 654 (citations omitted).

## III.  Analysis

### A.  Administrative Exhaustion

As a preliminary matter, the court must consider Defendant's argument that the court lacks subject matter jurisdiction based on Plaintiff's failure to present her claim to the appropriate agency within two years of the claim's accrual.  *See* 28 U.S.C. § 2401(b) (setting forth two-year time requirement).  Defendant asserts that Plaintiff's attorney signed the administrative claim form and noted that he represented Ms. Burnett, but failed to present any extrinsic evidence of his authority to present the claim on Ms. Burnett's behalf, as 28 C.F.R. § 14.2(a) requires.[2]  Defendant argues the requirement that a representative provide evidence of authority is jurisdictional and a failure to comply necessarily mandates dismissal.[3]

---

[2] In its motion, Defendant additionally argued that because Ms. Burnett's daughter, D'Aisha Burnett, was not specifically named as a claimant on the administrative complaint form, her claim (i.e., count II of the complaint) is barred under 28 U.S.C. § 2675. In its reply, Defendant withdraws this argument because it concedes that the amount of the wrongful death claim listed on the administrative form encompassed both Ms. Burnett and her daughter's damages, providing notice to Defendant.  Permitting the daughter to be an additional beneficiary therefore would not result in potential damages exposure exceeding that set forth on the administrative form.  *See Starr v. United States*, 262 F.Supp.2d 605, 607-08 (D.Md. 2003) (denying motion to dismiss where the administrative claim form did not specifically list parents as "claimants" for wrongful death suit, but the government was on constructive notice of the claim because of the damages listed).

[3] Defendant never directly cites authority for this assertion.
(continued...)

Title 28 U.S.C. § 2675 sets forth the preliminary requirements for filing a FTCA claim.  It provides that:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant shall have first *presented* the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency . . . .

*Id*.  (emphasis added).  Title 28 C.F.R. § 14.2 articulates the criteria for proper "presentment" of the administrative claim.  In relevant part, it states:

> [A] claim shall be deemed to have been presented when a Federal agency receives from a claimant, his duly authorized agent or legal representative, an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain for injury to or loss of property, personal injury, or death alleged to have occurred by reason of the incident; and the title or legal capacity of the person signing, and is accompanied by evidence of his authority to present a claim on behalf of the claimant as agent, executor, administrator, parent, guardian, or other representative.

28 C.F.R. § 14.2(a).

---

[3](...continued)
For example, in its reply, Defendant states: "[*Assuming* that the requirements of 28 C.F.R. § 14.2(a) at issue are jurisdictional, counsel's failure to provide a demonstration of his authorization to act on Plaintiff's behalf bars their claims . . . ." (Paper 9, at 17-18) (emphasis added).

In support of its argument, Defendant primarily relies on the Fourth Circuit's opinion in *Ahmed v. United States*, 30 F.3d 514 (4th Cir. 1994). In *Ahmed*, the court confirmed that "the requirement of filing an administrative claim is jurisdictional and may not be waived."[4] 30 F.3d at 516 (quoting *Henderson v. United States*, 785 F.2d 121, 123 (4th Cir. 1986)). The court stated that 28 C.F.R. § 14.2(a) has been interpreted "to indicate that the claimant meets [her] burden if the notice (1) is sufficient to enable the agency to investigate and (2) places a 'sum certain' value on her claim." *Ahmed*, 30 F.3d at 516-17 (quotations omitted). The *Ahmed* court held that the presentment requirement was not met and dismissed plaintiff's personal injury claim. The facts in *Ahmed* are distinguishable from this case. In *Ahmed*, the plaintiff failed to present extrinsic evidence of the attorney's authority to file the plaintiff's personal injury claim, but, unlike in this case, the

---

[4] The court was referring to the act of filing itself, and not the individual filing requirements articulated in 28 C.F.R. § 14.2(a). In *Mack v. United States*, No. CIV.JFM 00-2296, 2001 WL 179888, at * 4 n.8 (D.Md. Feb. 21, 2001), Judge Motz stated:

> The Code of Federal Regulations contains a number of specific requirements for claim procedures, including requirements for filing a claim in a legal capacity different from one's personal status . . . . The Fourth Circuit never has directly ruled that compliance with these procedures is a jurisdictional prerequisite to filing suit under the FTCA. Because the Fourth Circuit has cited with approval cases holding that it is not, *see Ahmed*, 30 F.2d at 516-17 (citations omitted), I apply the general notice requirement stated in those cases.

court found that in fact the attorney never actually had such authority.   Defendant here does not assert that Plaintiff's attorney was without authority to file her claims.   Moreover, in *Ahmed,* the administrative complaint failed to list *any* amount of damages for the personal injury claim, which the court found deprived the government of the required notice and interfered with Congress's objective that a presentment would initiate a settlement procedure and investigation.   *Ahmed*, 30 F.3d at 517.   Here, Plaintiff's claim expressly states the amount she seeks.

Likewise, the other cases Defendant cites are either not directly applicable or can be factually distinguished. *See Kokotis v. United Postal Serv.*, 223 F.3d 275, 279-81 (4th Cir. 2000) (affirming dismissal where the plaintiff was given several warnings but still failed to state a sum certain within the statutory period; acknowledging the particular importance of the sum certain requirement in allowing the government to assess a claim's settlement value); *College v. United States*, 411 F.Supp. 738, 741 (D.Md. 1976) (finding two letters mailed to the Air Force, neither of which contained a claim for a sum certain, did not contain "an approximation of the claim"); *Lunsford v. United States*, 570 F.2d 221, 224, 226 (8th Cir. 1977) (affirming dismissal where the claimants never alleged they were authorized agents of the unnamed class members, the district court found such authority lacking, and no sum certain was stated with respect to the class claim); *Moody*

*v. United States*, 585 F.Supp. 286, 287-88 (E.D.Tenn. 1984) (dismissing claim of one plaintiff where the plaintiff was not a named claimant in the administrative complaint and there was no indication that the attorney was acting on her behalf in addition to the named claimant, because it did not provide government sufficient notice of two claims).  *See also McNeil v. United States*, 508 U.S. 106, 113 (1993) (stating that the duty to file an administrative complaint was not a "trap for the unwary" because of the clarity of § 2675; not addressing the specific filing requirements of 28 C.F.R. § 14.2).

The government was put on sufficient notice of Plaintiff's claims, and the fact that Mr. Winkelman was acting as her legal representative, through the administrative filing.  In box 2 of the claim form, Plaintiff's attorney expressly indicated that he was acting in a representative capacity for Plaintiff. (Paper 7, ex. 14).  There is a long-standing legal presumption that an attorney has authority to act on behalf of the person he or she represents. *See Bethlehem Steel Corp. v. Devers*, 389 F.2d 44, 45 (4th Cir. 1968) ("The presumption that an attorney who enters a general appearance has his client's authorization is a strong one."); *Daniels v. Thomas & Betts Corp.*, 263 F.3d 66, 77-78 (3rd Cir. 2001) ("The law has traditionally accepted an attorney's representation [regarding the authority conferred upon him] in the absence of reason to question [it]."); *Anderson v. Flexel, Inc.*, 47 F.3d 243, 249 (7th

8

Cir. 1995) (recognizing such a presumption; citing *Bethlehem Steel,* 389 F.2d at 45, in support); *Bartling v. Fruehauf Corp.*, 29 F.3d 1062, 1072 (6th Cir. 1994) (affirming there is a "long history of authority recognizing that attorneys generally have the authority to act on their clients' behalf without written authorization"); *Graves v. United States Coast Guard*, 692 F.2d 71, 74 (9th Cir. 1982) ("The designation 'attorney for Leonard Graves'" on a FTCA administrative complaint, is sufficient to satisfy the filing requirement "in view of the body of case law holding that the appearance of an attorney for a party raises a presumption that the attorney has the authority to act on that party's behalf.").

As the court in *Munger v. United States*, noted: "The FTCA was never intended as a trap for the unwary claimant. . . . [T]he purpose of 28 U.S.C. § 2675(a), is to provide notice to the relevant federal agency of claims, not to put up a barrier of technicalities to defeat their claims." 116 F.Supp.2d 672, 676 (D.Md. 2000) (internal quotation marks and citations omitted). In light of the long line of precedent recognizing the presumption of an attorney's authority, and lack of any dispute as to Mr. Winkelman's actual authority, the indication on the administrative complaint in Box 2, that Ms. Burnett was "represented by Michael J. Winkelman," was sufficient to provide Defendant with notice and to comply with the filing requirement.[5]

---

[5] Moreover, the government accepted the administrative claim, (continued...)

B.  **Independent Contractor Exception**

In its motion, Defendant asserts that the court lacks subject matter jurisdiction because the alleged negligent acts were committed by an independent contractor, and not by employees of the United States.  The FTCA provides a limited waiver of sovereign immunity, permitting liability against the United States only for injuries caused by government employees.  To the extent that an independent contractor commits the alleged act or omission the United States cannot be held liable.  *See* 28 U.S.C. § 2671; *United States v. Orleans*, 425 U.S. 807, 813-14 (1976).  If the court finds that the conduct in question was performed by an independent contractor, it "must dismiss the action for want of subject matter jurisdiction."  *Robb v. United States*, 80 F.3d 884, 887 n.2 (4th Cir. 1996).

Whether an actor is an independent contractor is determined by federal law.  *Robb*, 80 F.3d at 887.  This court noted:

> The critical inquiry turns on whether the government has the power to control the detailed physical performance of the contractor, *see Logue v. United States*, 412

---

and at no time questioned the attorney's capacity to represent Plaintiff or requested additional proof of his capacity, despite several opportunities to do.  *See* (paper 8, ex. 5) (accepting administrative complaint and stating that the claim was being processed); (paper 8, ex. 6) (acknowledging attorney's May 2004 phone call following up on the government's investigation).  *See also Mack*, 2001 WL 179888, at *5 (looking to other correspondence between the government and claimant to determine government's understanding regarding the administrative complaint).

U.S. 521, 527-28, 93 S.Ct. 2215, 37 L.E.2d 121
(1973), or whether the government supervises
the "day to day" operations of the project.
[*United States v.*] *Orleans*, 425 U.S. [807,]
815 [(1976)]. As the Fourth Circuit stated in
*Williams*:

> Read together, *Logue* and *Orleans*
> establish the principle that the United
> States will not be liable under the
> independent contractor exception of the
> FTCA by virtue of entering contracts and
> demanding compliance with federal
> standards, unless the United States
> actually supervises the "day to day
> operations" of the endeavor.

*Williams*, 50 F.3d at 306 (quoting *Logue,* 412
U.S. at 529).

*Weakland v. United States*, No.Civ.A.DKC 2002-3083, 2005 WL 300084,

at *4 (D.Md. Feb. 8, 2005).

There is a factual dispute as to whether IMI was an

independent contractor. Plaintiff asserts that Defendant

maintained control over the "day to day" operations of the

greenhouse renovations and, therefore, the independent contractor

exception is not applicable. Plaintiff's argument hinges on two

facts. First, in her complaint, Plaintiff states that Defendant

maintained a trailer "in close proximity" to the greenhouse that

housed government employees "whose purposes including [sic], but

were not limited to, inspecting the work being performed on the

greenhouse and otherwise ensuring safety and security of the work

being performed on the greenhouse in question." Second, in her

opposition memorandum, Plaintiff puts forth evidence that during a

visit to the accident site by Plaintiff's attorney and Mr. Stehle, an engineer hired by Plaintiff, Mr. Raymond Carrion, an employee of the Department of Agriculture, "came out of the trailer and introduced himself, . . . handed [out] individual business cards, and stated words to the effect of 'I am the individual responsible for this project.'"

Defendant does not dispute that Mr. Carrion and other employees worked in the on-site trailer, but maintains that the employees, including Mr. Carrion, merely exercised their "contractual right to inspect the work of the contractor and to ensure its compliance with the terms of the contract, including its responsibility to comply with applicable safety regulations." (Paper 9, at 9). Defendant asserts that no employee engaged in day to day oversight. Defendant correctly contends that neither a contract demanding compliance with federal standards nor giving Defendant inspection rights nullifies the independent contractor exception. *See Williams*, 50 F.3d at 306-07.

Defendant also cites numerous contract provisions delegating the responsibility for safety and accident prevention to IMI, and articulating IMI's responsibility for supervising the renovation work. For example, the contract's description of the scope of work provides: "The contractor shall provide all staff, labor, materials, tools, transportation, equipment, and supervision as required by the Government . . . ." (Paper 7, ex. 1, at 10, B.1).

12

The contract also indicates that IMI was required to designate an on-site project manager responsible for supervising contractor employees. (Paper 7, ex. 1, at 18, 110.1). The contract further specifies that IMI was responsible for complying with federal safety regulations and "for providing and placing all barricades, lighting, and safety devices during any of [its] activities." (Paper 7, ex. 1, at 19, C.120).[6]

Finally, Defendant maintains that IMI's performance, both prior to and after Mr. Burnett's accident, shows that IMI, and not Defendant, was responsible for safety at the greenhouse. Defendant asserts that prior to the incident, JMI, a separate contractor Defendant hired to ensure IMI's compliance with the terms of the agreement, reported several safety violations to both IMI and ARS. ARS independently contacted IMI demanding corrective action be taken and threatening to shut down the project should the issues remain.[7] IMI then resolved some of the issues, and Defendant exercised its discretion not to shut down the project. After the accident, Defendant asserts that IMI prepared and submitted to ARS a revised safety plan and, pursuant to this plan, IMI then erected scaffolding around the sides of the greenhouse structure.

---

[6] There are multiple additional contract provisions delegating responsibility for safety measure compliance and project supervision to IMI.

[7] The contract provided that if IMI failed to correct safety issues, the United States had discretion to shut down the project. (Paper 7, ex. 1, at 50).

13

The overwhelming evidence supports that IMI was an independent contractor, and that Defendant did not maintain day to day oversight of the renovation.  Plaintiff acknowledges that she has a limited factual basis for her argument that the independent contractor exception is inapplicable, but asks the court for discovery on this issue because "further discovery could show that IMI was under the direct control and supervision of ARS, rendering the independent contract exception inapplicable."  (Paper 8, at 12).

As noted, the court should grant the 12(b)(1) motion "only if the material jurisdictional facts are not in dispute."  *Richmond*, 945 F.2d at 768.  Whether or not IMI was an independent contractor is a material fact.  Accordingly, the court will allow the parties a brief period in which to conduct limited discovery regarding the extent to which Defendant engaged in on-site oversight of the greenhouse renovation and to submit supplemental briefing.  The court will then hold a hearing on Defendant's motion to dismiss.[8] A separate ORDER will follow.

_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

---

[8] Defendant also asserts that even if the independent contractor exception does not apply, this court lacks subject matter jurisdiction because of the discretionary function exception to Defendant's waiver of sovereign immunity.  The court will defer consideration of this argument until after the hearing.